■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EUGENE FRANCIS, Appellant. [18 NYS3d 129]—

Appeal by the defendant from a judgment of the Supreme Court, Westchester County (Neary, J.), rendered May 2, 2012, convicting him of attempted burglary in the first degree, upon his plea of guilty, and imposing sentence.

Ordered that the judgment is affirmed.

The defendant was charged in a single indictment with multiple criminal offenses arising from two separate incidents

that occurred on June 29, 2010, and July 1, 2010. He subsequently moved to dismiss the indictment on the ground, inter alia, that his statutory right to a speedy trial had been violated (*see* CPL 30.30). Following a lengthy hearing on the matter, the Supreme Court (Molea, J.), issued a decision and order dated January 9, 2012, in which it granted the defendant's motion. However, on the following day, and clearly within the time period for reargument, the court issued an amended decision and order with respect to its statutory speedy trial determination, granting the motion with respect to the first six counts of the indictment, but denying it with respect to counts seven, eight, and nine. In the amended decision and order, the court explained that, while the first six counts of the indictment pertained to the defendant's conduct on June 29, 2010, and had to be dismissed because more than six months of unexcused delay had occurred between the filing of the felony complaint regarding that conduct and the People's indication of readiness for trial, the criminal conduct underlying counts seven, eight, and nine was the subject of a second, separate felony complaint, and there was no evidence of a speedy trial violation with respect to those counts. In fact, the case file demonstrates that the People indicated their readiness for trial well within six calendar months after that second felony complaint was filed.

The prosecution of the defendant proceeded on counts seven, eight, and nine, which charged him with burglary in the first degree, robbery in the second degree, and menacing in the second degree, respectively. Thereafter, on March 6, 2012, the defendant entered a plea of guilty to the reduced charge of attempted burglary in the first degree in full satisfaction of the indictment. As a condition of the negotiated plea, the defendant conceded his status as a second violent felony offender and, on May 2, 2012, a judgment was rendered sentencing him in accordance with that status.

The defendant appeals from the judgment, contending that his plea must be vacated because the court erred in issuing the amended decision and order dated January 10, 2012, which denied his CPL 30.30 dismissal motion as to counts seven, eight, and nine, since the indictment had already been dismissed on the previous day, and the amended decision and order was "without legal basis or explanation." We disagree.

Under the foregoing circumstances, the Supreme Court did not err in amending its initial decision and order to deny those branches of the defendant's motion which were to dismiss counts seven, eight, and nine of the indictment. A court pos-

sesses "inherent authority to rectify a prior error in dismissing an indictment" (*People v Bigwarfe*, 128 AD3d 1170, 1171 [2015]; *see People v Russ*, 292 AD2d 862 [2002]), and "where there is a clearly erroneous dismissal of an indictment or count thereof, it is unreasonable to foreclose a court from reconsidering its previous determination" (*People v Lynch*, 162 AD2d 134, 134 [1990]; *see People v Frederick*, 62 AD3d 612 [2009], *lv granted* 12 NY3d 925 [2009]; *affd* 14 NY3d 913 [2010]; *People v Contreras*, 192 AD2d 417 [1993]), even in the absence of a formal motion for leave to reargue by the People (*see People v Bigwarfe*, 128 AD3d 1170 [2015]; *People v Rosa*, 265 AD2d 167 [1999]). Furthermore, under the facts of this case, there was no constitutional or statutory impediment to the court's power to promptly modify its prior determination to dismiss the indictment and to thereby correct the previous error (*see People v Rosa*, 265 AD2d 167 [1999]; *People v Lynch*, 162 AD2d 134 [1990]; *see also Matter of Lionel F.*, 76 NY2d 747 [1990]).

Here, the Supreme Court recognized the error only one day after issuing the initial decision and order, well within the time period during which, for example, a motion for leave to reargue could have been made and before the People even had a reasonable opportunity to make such a motion. Moreover, while any present challenge to the court's determination of the statutory speedy trial issue in the amended decision and order was forfeited by the defendant's knowing, voluntary, and intelligent plea of guilty (*see People v O'Brien*, 56 NY2d 1009 [1982]; *People v Briggs*, 123 AD3d 1051 [2014]; *People v Bediako*, 119 AD3d 598 [2014]; *People v Sze*, 113 AD3d 795 [2014]), we note, in any event, that the error in initially dismissing counts seven, eight, and nine based on an alleged statutory speedy trial violation was clearly apparent from the documents in the court file. Accordingly, the prompt issuance of the amended decision and order correcting the prior mistake in this case was not improper or jurisdictionally defective.

In reaching the opposite conclusion, our dissenting colleague does not dispute that the hearing court was factually correct in determining that the second felony complaint in this case was filed approximately six months after the first, and thus that the criminal charges emanating from that second felony complaint were not subject to a valid dismissal on statutory speedy trial grounds. Rather, relying upon several decisions which accurately recite the general proposition that a trial court loses jurisdiction to correct its own previous, nonclerical errors once final judgment has been rendered or sentence has commenced in a criminal action (*see e.g. People v Richardson*,

100 NY2d 847 [2003]; *Matter of Campbell v Pesce*, 60 NY2d 165 [1983]; *see also* CPL 430.10), the dissent concludes that, once the hearing court in this case issued its initial determination dismissing the indictment, it lacked the authority to correct that determination on the following day to accord with the true facts of the case. However, the relevant decisions specifically addressing the timely correction of errors in orders dismissing indictments have uniformly determined that there is no impediment to the making of such corrections.

For example, in *People v Bigwarfe* (128 AD3d 1170 [2015]), as in this case, the indictment contained two sets of criminal charges that arose from distinct incidents occurring on different dates, and were the subject of separate accusatory instruments filed at different times. The defendant therein moved to dismiss the entire indictment on the ground that his statutory right to a speedy trial had been violated. The trial court initially granted the motion and dismissed the indictment. However, although no formal motion for leave to reargue had been made, the court reconsidered the dismissal upon a letter request by the prosecution, and thereafter reinstated the counts of the indictment that were set forth in the second accusatory instrument, since no CPL 30.30 violation had occurred as to them. In affirming the court's determination, the Appellate Division, Third Department, held that the reinstatement of the counts constituted a proper exercise of the court's "inherent authority to rectify a prior error in dismissing an indictment" (*id.* at 1171). Accordingly, the decision in *Bigwarfe* fully supports an affirmance in the present case. Moreover, Appellate Division decisions in the First Department and the Fourth Department similarly have recognized a trial court's inherent power to timely rectify a prior error by reinstating a previously dismissed indictment (*see People v Russ*, 292 AD2d 862 [2002]; *People v Rosa*, 265 AD2d 167 [1999]; *People v Lynch*, 162 AD2d 134 [1990]).

The dissent posits that the foregoing decisions are distinguishable from the present case because they did not involve sua sponte corrective orders. However, no formal motion to correct the error was made in *People v Bigwarfe* or in *People v Rosa*, and the dissent does not cite any statutory or decisional authority requiring the making of either a formal motion or an informal application as a precondition to the court's corrective action. Nor does the dissent point to any logical basis for engrafting such a requirement upon the court's exercise of its inherent powers. In this regard, we decline to adopt the incongruous proposition that a court may exercise its well-

established inherent power to correct errors in its orders only when a party affirmatively requests that it do so.

Additionally, there is a more fundamental problem in the dissent's attempt to distinguish the foregoing decisions from the present case on the basis that the court acted sua sponte here. If, as the dissent maintains, the Supreme Court lost all jurisdiction to act in this matter once it issued the order dismissing the entire indictment pursuant to CPL 30.30, then that court would be powerless to correct any errors in its order, regardless of whether it sought to do so on its own motion in the exercise of its inherent authority, or pursuant to a formal motion (e.g., for leave to reargue) made by the prosecution for the same relief. Of course, that is not the law. Rather, the Court of Appeals and our own Court have entertained numerous appeals in cases where a trial court granted a motion for leave to reargue with regard to an order dismissing the entire indictment under CPL 30.30, and all of the resulting appellate decisions have reviewed the merits of the orders made upon reargument without any suggestion that those orders were improper because the trial courts no longer possessed jurisdiction to render them (*see e.g. People v Chavis*, 91 NY2d 500 [1998]; *People v Lynch*, 103 AD3d 919 [2013]; *People v Smith*, 88 AD3d 749 [2011]; *People v Aaron*, 201 AD2d 574 [1994]). The foregoing case law demonstrates that a trial court retains the authority both to entertain a motion for leave to reargue and to exercise its inherent power to correct errors following the dismissal of an indictment pursuant to CPL 30.30. In arguing that an order of dismissal pursuant to CPL 30.30 deprives the court of jurisdiction to act any further in the matter, the dissent would effectively vitiate the prosecution's right, repeatedly recognized in the foregoing decisions, to timely seek reargument in connection with such dismissals.

Finally, the dissent makes the related assertion that a motion by the People in this case for leave to reargue to correct the date of filing of the second felony complaint would have been fruitless. However, the potential merit of such a motion is irrevelant to the present discussion. It is the fact that a motion for leave to reargue *could have been entertained by the court*—rather than whether it would have been successful—that is significant, for if the People could seek to correct the error in the dismissal order by way of reargument, and if the court had the authority to entertain the merits of such a motion (as case law instructs that it does), then there is no reason that the hearing court could not similarly act to correct the error in the exercise of its inherent authority, as the relevant case law

holds and as was done here. Moreover, even if we were to accept the dissent's proposition that reargument would have been inappropriate because the People previously had relied upon the erroneous filing date in opposing the dismissal motion, that oversight by the People did not compel the hearing court to likewise adopt the demonstrably false filing date and to refrain from exercising its inherent corrective powers to rectify the error once it was discovered. The dissent's suggestion that the court was bound to accept allegations of fact which it knew to be inaccurate from the face of the record is unpersuasive, and we find no legal support for compelling a trial court to adopt a fictional account of a case under these circumstances merely because the parties have erroneously done so. Indeed, it appears that the erroneous date at issue in this case, which was evident on the face of the record and could not have been controverted by the defendant, is precisely the type of mistake that the court's inherent power to correct errors is designed to remedy.

Thus, the significance of noting the People's ability to seek reargument in the context of CPL 30.30 dismissal orders lies in demonstrating that the trial court's exercise of its inherent power to correct the error in this case was authorized and timely, having been made well within the period during which reargument could have been sought and considered. Accordingly, since the hearing court in the present case could have entertained a timely motion for leave to reargue to correct its initial order, it properly exercised its inherent authority to correct the error in that order a mere day after it was issued, without awaiting the making of such a motion by the People. As such, a valid indictment was pending at the time of the defendant's plea, and his plea of guilty was not jurisdictionally defective.

In view of the foregoing discussion, we do not address the parties' remaining contentions. Mastro, J.P., Miller and Duffy, JJ., concur.

Balkin, J., dissents and votes to reverse the judgment, on the law, to vacate the plea of guilty, to vacate the amended decision and order dated January 10, 2012, and to remit the matter to the Supreme Court, Westchester County, for further proceedings, with the following memorandum: As noted by the majority, the Supreme Court granted the defendant's motion to dismiss the indictment, in its entirety, on the ground that the defendant had been denied a speedy trial. The next day, however, the court, sua sponte, issued an amended decision and order, in which it granted the defendant's speedy trial mo-

tion only as to the first six counts of the indictment. It denied the motion as to the remaining three counts, and did so on a ground that the People had never asserted. I disagree with the majority's conclusion that the Supreme Court's sua sponte "do-over" of its order was within the court's inherent power to correct its own mistake. Accordingly, I find that the defendant's plea of guilty rests on a jurisdictional defect.

On June 29, 2010, the defendant pointed a gun at Darryl Reid and accused him of not intending to pay a debt. After a brief struggle, the defendant shot Reid in the back of the head, seriously injuring him. On July 1, 2010, two days later, the defendant, once again armed, broke into the home of Reid's brother, Dwan, and robbed Dwan at gunpoint. On July 19, 2010, a felony complaint was filed with respect to the first incident and, six months later, in February 2011, an entirely separate felony complaint was filed with respect to the second incident. An indictment filed in April 2011 charged the defendant with crimes arising from both incidents.

In October 2011, the defendant moved to dismiss the indictment on the ground that he had been denied his statutory right to a speedy trial pursuant to CPL 30.30. In opposition to the motion, the People argued that, although the criminal action had commenced on July 19, 2010, with the filing of the first felony complaint, the defendant's motion should have been denied because less than six months of delay was chargeable to them under CPL 30.30. In its decision directing a hearing, the Supreme Court agreed with the People that, for the purposes of CPL 30.30, the action had been commenced on July 19, 2010. After the hearing was held, the People submitted another memorandum of law. Again, they unequivocally took the position that the action had commenced on July 19, 2010, stating: "As set forth in the People's opposition to the defendant's motion to dismiss, the felony complaint in this matter was filed on July 19, 2010. The People had until January 19, 2011, or 184 days, to announce readiness for trial. . . . [S]ince at least 138 days are excludable . . . the People stayed well within the 184 day limit."

The Supreme Court issued its decision and order on January 9, 2012. The court again held that, for the purposes of CPL 30.30, the action had commenced on July 19, 2010: "[a]t the outset, the Court finds that the instant criminal action commenced on July 19, 2010, upon the filing of a felony complaint in the Yonkers City Court which charged the conduct which is the subject of the instant indictment." It also held that more than six months of delay was chargeable to the People.

Therefore, it granted the defendant's motion to dismiss the indictment. The clerk entered the dismissal order that day.

The next day, however, the Supreme Court issued an amended decision and order. Rather than dismissing the indictment in its entirety, the court, in the amended decision and order, granted the defendant's motion only with respect to the crimes alleged to have taken place on June 29, 2010. It denied the motion with respect to the crimes alleged to have taken place on July 1, 2010. The court held that, although the criminal action with respect to the incident on June 29, 2010, had commenced on July 19, 2010, with the filing of the first felony complaint, the criminal action with respect to the incident on July 1, 2010, had commenced six months later, in February 2011, with the filing of the second felony complaint. Thus, the court held that, although more than six months were chargeable to the People with respect to the crimes related to the incident on June 29, the People had announced their readiness for trial within six months as to the crimes related to the incident on July 1. The record is silent as to what prompted the amended decision and order.

In November 2012, the defendant pleaded guilty. His primary contention on this appeal is that the Supreme Court no longer had jurisdiction over the case once it dismissed the entire indictment on January 9, 2012. Accordingly, he contends that the amended decision and order dated January 10, 2012, was a nullity, and that he had pleaded guilty when no accusatory instrument was pending.

Preliminarily, as my colleagues implicitly agree, the defendant's jurisdictional claim survives his otherwise valid waiver of his right to appeal (*see People v Zanghi*, 79 NY2d 815, 817 [1991]; *People v Sze*, 113 AD3d 795, 796 [2014]; *People v Siminions*, 112 AD3d 974, 975 [2013]). That is because a "valid and sufficient accusatory instrument is a nonwaivable jurisdictional prerequisite to a criminal prosecution" (*People v Case*, 42 NY2d 98, 99 [1977]; *see People v Hansen*, 95 NY2d 227, 230 [2000]; *People v David*, 95 AD3d 1031, 1031 [2012]; *People v Long*, 56 AD3d 685, 685 [2008]; *People v Flores*, 43 AD3d 955, 955 [2007]).

A court has the inherent power to correct its own mistakes, but the extent of that power depends on whether the case is still pending. As the Court of Appeals said in *Matter of Van Leer-Greenberg v Massaro* (87 NY2d 996 [1996]), "[b]efore sentence is imposed, trial courts in criminal cases have the general inherent authority to correct their own mistakes" (*id.* at 998; *see People v Bartley*, 47 NY2d 965 [1979]; *People v*

*Cimino,* 163 App Div 217, 218-219 [1914]). Thus, a court may, in the exercise of its inherent power, rethink a ruling and change its mind, so long as at least part of the case is still pending (*see Matter of Lionel F.,* 76 NY2d 747, 749 [1990]). In *People v Lemmons* (270 App Div 828 [1946]), for example, the trial court dismissed one of the counts in the indictment during trial, but changed its mind and reinstated that count before the trial ended. On appeal, we held that the court was within its power to rethink its ruling because it had done so while the case was still pending: "It was a proper exercise of the inherent power of the court to correct any errors in its own rulings, *provided such correction be made before the termination of the trial or the proceedings*" (*id.* at 828 [emphasis added]; *see People v Cimino,* 163 App Div at 218-219).

A court's power to rethink a ruling is much narrower after the case is no longer pending. As the Court of Appeals said long ago in *Bohlen v Metropolitan El. Ry. Co.* (121 NY 546, 550-551 [1890]), courts "should not, *after the final judgment,* by amendment, change a ruling upon the law, or alter the decision upon the merits, for, by so doing, the substantial rights of the adverse party would be really affected" (*id.* at 551 [emphasis added]; *see People v Wright,* 56 NY2d 613, 614 [1982]; *People v Minaya,* 54 NY2d 360, 365 [1981]; *Herpe v Herpe,* 225 NY 323, 327 [1919]). The Court was more categorical in *Matter of Campbell v Pesce* (60 NY2d 165 [1983]), in which it rejected the contention that a court had the inherent power to vacate a plea after the defendant had already been sentenced: "[i]n no instance have we recognized a court's inherent power to vacate a plea and sentence over defendant's objection where the error goes beyond mere clerical error apparent on the face of the record and where the proceeding has terminated by the entry of judgment" (*id.* at 169; *see Matter of Kisloff v Covington,* 73 NY2d 445, 452 [1989]). Further, the law is settled that "a trial court has no revisory or appellate jurisdiction, sua sponte, to vacate its own order or judgment" (*Adams v Fellingham,* 52 AD3d 443, 444 [2008]; *see Carter v Johnson,* 110 AD3d 656, 659 [2013]; *JSO Assoc., Inc. v Price,* 104 AD3d 737, 738 [2013]; *People v Brown,* 6 AD3d 1210, 1210 [2004]; *Osamwonyi v Grigorian,* 220 AD2d 400, 401 [1995]; *cf. Matter of Shawn H. v Kimberly F.,* 115 AD3d 744, 745 [2014]).

A "criminal action . . . terminates with the imposition of sentence *or some other final disposition in a criminal court of the last accusatory instrument filed in the case*" (CPL 1.20 [16] [emphasis added]; *see* CPL 210.20 [4]). The dismissal of an indictment under CPL 30.30 bars reprosecution of the charges

in it and constitutes a final disposition of the action (*see* CPL 1.20 [16]; 210.20 [4]). Thus, when the Supreme Court granted the defendant's motion in its entirety on January 9, 2012, its inherent power to rethink its rulings terminated (*cf. People v Lemmons*, 270 App Div at 828; *People v Cimino*, 163 App Div at 218-219).

The majority concludes that the Supreme Court had the inherent power to change its mind, even sua sponte, because it did so when a motion for leave to reargue would have been permissible. In support of its conclusion, my colleagues rely on cases from the other Departments (*see People v Bigwarfe*, 128 AD3d 1170 [2015]; *People v Russ*, 292 AD2d 862 [2002]; *People v Rosa*, 265 AD2d 167 [1999]; *People v Lynch*, 162 AD2d 134 [1990]), but all four cases are distinguishable from what happened here. First, and most important, none of the trial courts in those cases acted sua sponte. In *Lynch* and *Russ,* the People moved for leave to reargue. In *Bigwarfe*, the People made a "letter request to reconsider," and the court, before ruling on the request, conducted a hearing in which the defendant was given a full opportunity to be heard (*People v Bigwarfe*, 128 AD3d at 1171). In *Rosa*, the court had already granted the People leave to re-present the case to the grand jury when the defendant withdrew his dismissal motion and asked the court to reinstate the indictment as part of a plea agreement (*People v Rosa*, 265 AD2d at 167). Thus, none of those cases supports the proposition that a court may, sua sponte, reinstate an accusatory instrument that it has already dismissed in its entirety.

Second, the issue in *Lynch, Russ*, and *Rosa* involved dismissals for defects in the grand jury proceeding, not final dismissals of the actions pursuant to CPL 30.30. Indeed, unlike CPL 30.30 dismissals, which are final, the particular defects in those cases were of the sort that, by statute, may be remedied with leave of the court. Specifically, the Criminal Procedure Law expressly provides that a court may grant the People leave to re-present the case to the grand jury after certain types of dismissals (*see* CPL 210.20 [4]). In other words, the dismissal of an indictment for certain defects in grand jury proceedings is not necessarily a "final disposition" (CPL 1.20 [16]). The court's inherent power, accordingly, has not terminated after those dismissals. Indeed, as the First Department has held, when the court, upon review of the grand jury minutes, has dismissed an indictment with leave to re-present, the felony complaint remains pending to form the foundation of the new charges (*see People v Wiltshire*, 23 AD3d 86, 89 [2005]; *People v*

*Lopez,* 10 AD3d 264, 266-267 [2004], *lv granted* 3 NY3d 758 [2004]; *affd* 4 NY3d 686 [2005]). Thus, the action has not terminated at all. The dismissal of an indictment under CPL 30.30, by contrast, is, undeniably, a final disposition.

My colleagues assert that so long as the court has the power to hear reargument, it may change its ruling sua sponte, even where the action has "terminate[d]" (CPL 1.20 [16]). The majority, however, cites no case in which such a sua sponte change of ruling was upheld.

Moreover, as to the majority's point that the Supreme Court issued its order before the People even had a reasonable opportunity to make a motion for leave to reargue, I note that reargument would not have been proper in any event because reargument is not available as a "do-over" for a party that has made the wrong arguments or neglected to present available evidence the first time (*People v Kevin W.,* 22 NY3d 287, 296 [2013], *lv granted* 19 NY3d 1027 [2012], *affd* 22 NY3d 287 [2013]; *see Matter of Anthony J. Carter, DDS, P.C. v Carter,* 81 AD3d 819, 820 [2011]; *V. Veeraswamy Realty v Yenom Corp.,* 71 AD3d 874, 874 [2010]; *Woody's Lbr. Co., Inc. v Jayram Realty Corp.,* 30 AD3d 590, 593 [2006]; *McGill v Goldman,* 261 AD2d 593, 594 [1999]). The People argued, before and after the CPL 30.30 hearing, that the action commenced on July 19, 2010, with the filing of the first felony complaint, but that there was sufficient excludable time to bring them within the six-month limit. In its written orders both before and after the CPL 30.30 hearing, the court did not overlook the People's argument as to the commencement date, but agreed with it. Thus, the court's change of result was based on a ground that had never been asserted. In other words, what happened here is not even remotely akin to reargument (*cf. Matter of Lionel F.,* 76 NY2d at 749).

Rejection of the majority's conclusion would not change settled law. It would merely accord with the settled doctrine that a trial court has no "revisory or appellate jurisdiction to vacate its own order, sua sponte" (*People v Brown,* 6 AD3d at 1210; *see Herpe v Herpe,* 225 NY at 327; *Reisman v Coleman,* 226 AD2d 693, 693 [1996]), and certainly has no inherent power to do so after the case has terminated with a final disposition (*see* CPL 1.20 [16]; *Matter of Campbell v Pesce,* 60 NY2d at 169; *Matter of Kisloff v Covington,* 73 NY2d at 452).

In sum, I conclude that the Supreme Court acted in excess of its power when, after terminating the action, it sua sponte issued the amended order (*see Herpe v Herpe,* 225 NY at 327; *People v Brown,* 6 AD3d at 1210). Inasmuch as the amended

order was a nullity, the defendant's plea of guilty rests on a jurisdictional defect and must be vacated.

Accordingly, I respectfully dissent.